992 So.2d 436 (2008)
David Reid HITCHCOCK, Appellant,
v.
Priscilla U. HITCHCOCK, Appellee.
Nos. 4D06-4743, 4D07-1049.
District Court of Appeal of Florida, Fourth District.
October 22, 2008.
*437 Russell J. Ferraro, Jr. of Ferraro Law Group, P.L., Stuart, and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, for appellant.
Martin L. Haines, III of Haines & Hodas, Chartered, Lake Park, for appellee.
TAYLOR, J.
David Reid Hitchcock appeals the trial court's final judgment of dissolution of marriage and order awarding attorney's fees and costs. He contends that the trial court abused its discretion by unequally distributing the parties' marital assets and liabilities in favor of the wife, denying his claim for alimony, and awarding insufficient child support. The wife cross-appeals the trial court's finding that the waterfront home titled solely in her name is a marital asset. We reverse only as to the equitable distribution award and order for attorney's fees and costs.
David and Priscilla Hitchcock were married on October 26, 1985 and had three children during the marriage. After twenty-one years of marriage, the wife filed a petition for dissolution of marriage. She claimed a special equity in the marital home and other properties acquired during the marriage because a substantial portion of the parties' assets was derived from gifts and inheritances she received from her family both before and during the marriage. The wife further sought an unequal distribution of the marital assets based on her contribution of separate funds.
At the time of the divorce, the wife was fifty-three years old and a lifelong diabetic. She testified that she tried to keep the *438 money that she had received through inheritances and gifts separate from other funds throughout the marriage. The wife first bought the St. Lucie non-waterfront lot with her savings and titled it in solely her name. Less than a year later she bought a waterfront lot in St. Lucie using solely her father's inheritance. She alone paid for the construction of a house on that lot. The wife then bought a farm in Wisconsin using her inheritance, and it was titled in her name. When she sold the farm, she carried out a 1031 exchange and bought Pearl Lake Apartments, also titled in her name. The wife next bought a property called "Bluemound" in Wisconsin using her inheritance. Bluemound was purchased via an operating agreement, and the wife contributed $600,000 in cash while the husband contributed an airplane that previously had been purchased by the wife.
The husband testified that he was fifty-eight years old and had brought a little less than $100,000 into the marriage. He worked as a golf course superintendent and owned a lawn service during part of the marriage. He pooled his earnings with the wife and gave her 95% of what he earned, which amounted to about $60,000 per year. He contributed to the purchase of the waterfront lot, the non-waterfront lot, and the construction of the house on the waterfront lot. Purchase of the Wisconsin farm was the husband's idea, and he contributed money toward it. In 1994 he became a stay-at-home dad and managed the family assets. The husband found Pearl Lake Apartments and did all of the work involved in acquiring it. During the pendency of the divorce, the husband had a negative income and had to sell securities to pay his $15,000 monthly expenses.
The trial court dissolved the parties' marriage. In its final judgment, the trial court rejected the wife's claim of a special equity in any of the properties. The court found that the wife's non-marital funds, which were contributed during the early years of this twenty-one marriage and commingled with marital assets, lost their non-marital character. The court found that the wife's inheritance monies could not be traced to purchase of the parties' assets and that the wife failed to rebut the presumption of a gift to the husband of a one-half interest in those funds. The court further found that the husband had devoted his life to managing and investing the wife's inherited funds and the parties' assets, and that the increase in value of the parties' assets and the income generated by those assets were, in part, due to the husband's marital efforts. The trial court concluded that the increase in value and income commingled with the assets themselves and that "all of these assets became marital by virtue of the commingling." The court also determined that the husband had contributed his own money to accounts titled solely in the wife's name and that the husband was the primary caregiver of the parties' three children.
Although the court found that the wife was not entitled to a special equity as a result of her financial contribution of non-marital assets, the court relied upon this same financial contribution as a basis for an unequal distribution of the marital assets. The court reasoned that, because the wife contributed $2,227,167 of her separate assets to the marriage, while the husband contributed less than $100,000, it would be equitable for the wife to receive more than half of the marital assets. Moreover, the court found it relevant that the wife was under the mistaken belief that items titled solely in her name would be exempt from equitable distribution in the event of a divorce.
The court awarded the wife $3,793,317 in assets and awarded the husband $2,496,758. The court also held the husband *439 responsible for $1,024,621 in marital liabilities, while holding the wife responsible for none. The net effect of the trial court's division was that the wife received approximately 72% of the marital assets, while the husband received about 28% of the marital assets.
As mentioned above, the trial court relied mainly on the fact that the wife made a "vastly disproportionate initial financial contribution" to the marriage to justify the unequal distribution of marital assets. This was an abuse of discretion. See Williams v. Williams, 686 So.2d 805 (Fla. 4th DCA 1997) (holding that husband's significant contribution of premarital assets, which were commingled and untraceable, did not justify the trial court's disparate treatment of the marital assets in a nine-year marriage). Similarly, in this long-term marriage of twenty-one years, the unequal distribution of assets and liabilities cannot be supported based on the wife's contribution of nonmarital funds which the court found were commingled and presumptively a gift to the husband. We therefore reverse on this issue.
The husband also argues that the court erred in valuing the Oceanside Bank account at $17,540 and awarding it as part of his equitable distribution, despite the parties' agreement that the account was the management operating account for Hitchcock Properties, LLC, and contained a zero balance at the time of trial. We agree and reverse on this point. With respect to a family heirloom chandelier which the husband claimed as his nonmarital property worth $15,000, the trial court noted in its final judgment that "there was no mention of the chandelier, nor was there any value attributed to it. Wherefore, the Court did not identify it or value it." The court thus abused its discretion in awarding the chandelier to the wife without further inquiry.
Finally, the husband argues that the trial court erred in its award of attorney's fees. The court awarded attorney's fees, costs and suit money in the same percentages as the court's award of equitable distribution. Because we are reversing the unequal distribution of marital assets and remanding for the trial court to distribute the marital assets equally, we reverse and remand for the trial court to reconsider its award of attorney's fees and costs based on the parties' relative financial circumstances regarding their need and ability to pay. See Bernstein v. Bernstein, 524 So.2d 472, 473 (Fla. 4th DCA 1988) (stating that how marital assets have been divided is relevant, though not controlling, in awarding attorney's fees).
We affirm as to the husband's remaining issues on appeal, as well as to the wife's issue on cross-appeal. We reverse the equitable distribution award and remand for the trial court to redistribute the marital assets and liabilities equally and to enter such further relief consistent with this opinion.
Affirmed in part; Reversed in part and Remanded.
HAZOURI and MAY, JJ., concur.